UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON SCHMOEKEL, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>THE VARIABLE ANNUITY LIFE INSURANCE COMPANY,<br><br>　　　　　　Defendant. | CASE NO.  CV 06-5282 DOC (RNBx)<br><br>**O R D E R GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

_____

   Before the Court is Plaintiff and Defendant The Variable Annuity Life Insurance Company's ("VALIC") Joint Motion for Preliminary Approval of Class Action Settlement ("Motion"), which requests that the Court: (1) grant preliminary approval for the proposed class action settlement; (2) grant conditional certification of the proposed settlement class; (3) authorize the mailing of the proposed class action notice upon approval of the allocation formula for the distribution of the settlement proceeds; and (4) schedule a hearing on the final approval of the settlement.  After considering the moving papers, as well as oral argument by the parties,

the Court hereby GRANTS the Motion.

**I.  BACKGROUND**

On August 22, 2006, Plaintiff Aaron Schmoekel ("Schmoekel"), then an employee of VALIC, individually and on behalf of all other similarly situated (collectively, "Plaintiffs"), filed a complaint asserting that he and other Financial Advisors who work, or worked, for VALIC in the State of California, in the positions of Financial Advisor, including non-licensed Financial Advisors (collectively, "FA"), Senior Financial Advisor ("SFA"), Associate Financial Advisor ("AFA"), Financial Planning Advisor ("FPA"), and Financial Services Advisors ("FSA") (collectively, "Financial Advisors"), were not reimbursed for various business expenses, and that various amounts were improperly deducted from their wages in violation of California Labor Code sections 2802 and 221, respectively. Plaintiff also alleged that VALIC violated California Business & Professions Code section 17200 ("Section 17200"). Finally, Plaintiff alleged that he and other Financial Advisors were due and not paid overtime under the Fair Labor Standards Act ("FLSA") and California law, and were denied meal periods and rest breaks under California law.

Over the course of thirteen months, the parties engaged in extensive discovery. VALIC produced information related to its Financial Advisors, their varying duties, the various ways they perform those duties, their compensation structures, and other information relevant to the exemption and meal/rest claims. VALIC has maintained that its Financial Advisors are properly classified as exempt under both the FLSA and California law and that individual issues would have precluded the certification of any class on these exemption questions, as well as meal/rest period issues. The class counsel recognized the inherent risk that the Court might agree with VALIC's position. Accordingly, by August 20, 2007, the parties agreed to participate in a mediation to determine whether, other than the putative class exemption and meal/rest claims, the action could be resolved.

On September 24, 2007 VALIC and class counsel engaged in a full-day private mediation with Mark S. Rudy, Esq. of Rudy, Exelrod & Zieff, LLP. They continued negotiating under Mr. Rudy's guidance for several days. On October 1, 2007, VALIC and Plaintiff reached the class

action settlement currently before the Court, pursuant to Mr. Rudy's proposal.

The Settlement resolves the class claims under Section 17200 and California Labor Code sections 2802 and 221, as well as Plaintiff's individual claims. The parties agreed that the class claims brought under the FLSA and the California wage claims would be dismissed without prejudice, leaving the putative class members in the same position as they were prior to Schmoekel filing this action, all through the filing of a stipulation and First Amended Complaint ("FAC"). To effectuate the parties' agreement and protect any ostensible absent class member, Plaintiff filed the FAC to clearly define which claims will be subject to settlement and dismissal with prejudice, and which are to be dismissed without resulting prejudice to the putative class (i.e., the FLSA misclassification, California misclassification, and failure to provide meal/rest period claims). In order to ensure that the putative class members are in the same position with regard to the claims dismissed, the Settlement provides for notice to the Class that the class claims (other than those brought under Section 17200 and California Labor Code section 2802 and 221) are dismissed without prejudice, that the statute of limitations through the date of preliminary approval has been tolled, and that if they believe they have such claims they should contact counsel. The parties agreed to resolve any and all individual claims with Schmoekel for $20,000.00. To attempt to avoid perceived conflict, the parties have agreed that, although Plaintiff has executed the Individual Settlement Agreement, it will not become effective until after the Court grants final approval of the Class Settlement and Plaintiff releases his individual FLSA claims.

Pursuant to the Joint Stipulation of Class Settlement Between Plaintiff and Defendant ("Settlement"), VALIC will pay a settlement sum of $1,680,000. The amount to be distributed to the class ("Remainder") will be calculated by subtracting from the settlement sum the following amounts: (a) Class Counsel's attorneys' fees and costs in an amount not to exceed $453,600, subject to Court approval; (b) reasonable costs for the Claims Administrator, not to exceed $40,000, for the administration of the settlement, subject to Court approval; (c) VALIC's employer contribution of all required payroll taxes; and (d) a service payment to the Class Representative in the amount of $30,000, subject to Court approval.

The settlement class consists of all Financial Advisors employed by VALIC in California during the period of August 22, 2002 through the date on which the Court grants preliminary approval of the settlement ("Class"). As of the mediation, the putative class population was 283 people. Class members will participate in the Settlement and share in the proceeds if they submit a valid and timely Claim Form. Class members may opt-out of the Settlement by submitting a timely Exclusion Form. Upon the effective date of settlement, all Class members who file Claim Forms and all Class Members who fail to file Exclusion Forms will be deemed to have released VALIC from any and all claims premised on California Labor Code sections 203, 221, and 2802 (to the extent such a claim is premised on unpaid expenses or improper deductions), arising from August 22, 2002 to the date on which the Court gives final approval of the Settlement. These individuals will also be deemed to have waived all rights and benefits afforded by California Civil Code section 1542, limited to the scope of the matters released through the Settlement.

The Remainder will be distributed to Class members who submit a timely and valid claim based on the number of weeks worked by the Class member from August 22, 2002 through the date of preliminary court approval of the Settlement, compared to the total number of work weeks during that time period for all Class Members. The Settlement is a claims-made settlement, so whatever is not claimed by Class members will be returned to VALIC. However, VALIC will pay out at least 80% of the Remainder value, regardless of the number of Class members who make a timely claim.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires the Court to approve a class action settlement and requires notice of settlement to all class members. Fed. R. Civ. P. 23(e)(1). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The first step is to assess whether a class exists. *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997)). Second, district courts must evaluate

"whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (internal quotation marks and citations omitted). During this process, the court "must pay undiluted, even heightened, attention to class certification requirements." *Id.* (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Conditional Class Certification

Federal Rule of Civil Procedure 23 governs class actions. Fed. R. Civ. P. 23. A party seeking class certification must demonstrate the following prerequisites: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to satisfying Rule 23(a)'s prerequisites, a party must also satisfy one of the three Rule 23(b) requirements. Fed. R. Civ. P. 23(b). After reviewing the Motion, the Court finds that the proposed class satisfies the four requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – as well as the Rule 23(b)(3) requirement that common questions of law or fact predominate over questions affecting individual members and a class action is a superior method for fairly and efficiently adjudicating the action.

#### 1. Numerosity

First, the class must be so numerous that joinder of members is impracticable. Fed. R. Civ. P. 23(a)(1). In this case, the Class size is approximately 283 people. Where courts have consistently held that joinder is impracticable in cases involving more than 35 parties, the numerosity requirement is certainly met in this case. *See*, *e.g.*, *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1997) (numerosity requirement met with approximately 110 potential class members); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) (numerosity requirement met with between 100 and 150 potential class members). In addition, the Class here is ascertainable because the Class members were or are employed by VALIC and can be determined from employment records.

5

### 2. Commonality

Second, a class has sufficient commonality "if there are questions of law or fact common to the class." Rule 23(a)(2). The Rule does not, however, require, all questions of fact and law to be common: "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Staton*, 327 F.3d at 953 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,1019 (9th Cir. 1998)). Here, the proposed Class members' claims stem from the same source: the allegation that VALIC was required to reimburse them for various incurred business-related expenses, as well as the allegation that VALIC made improper wage deductions, including deductions for some of these claimed business-related expenses. The class also seeks similar legal remedies pursuant to state law. Common questions include the viability of VALIC's defenses to payment of certain expenses, the definition of "reasonable" and "necessary" as it applies to the claimed expenses, whether the expenses were incurred in direct consequence of the discharge of the Class members' duties, whether chargebacks constitute deductions from wages, and whether the Class members voluntarily authorized the deductions. Accordingly, the proposed class meets the commonality requirement.

### 3. Typicality

Third, the claims or defenses of the representative parties must be typical to the claims and defenses of the class. Rule 23(a)(3). To be typical, the claims need not be identical. *Hanlon*, 150 F.3d at 1020. Plaintiff and the Class members allege that VALIC did not reimburse them for business-related expenses and made improper deductions for their wages. Plaintiff is a member of the proposed class and worked as a Financial Advisor for VALIC. Therefore, the claims and defenses of the named Plaintiff will be substantially similar to the claims and defenses of the entire Class.

### 4. Adequacy of Representation

Fourth, the representative parties must fairly and adequately protect the interests of the class. Rule 23(a)(4). This factor "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and

1  absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d
2  386, 390 (9th Cir. 1992) (citations omitted).  The named plaintiff here is represented by able and
3  experienced counsel, the parties engaged in significant discovery, and the proposed stipulated
4  settlement comes after arms-length negotiations.
5       All of the Class members who submit timely claims will receive a pro-rata portion of the
6  settlement fund based on the number of workweeks during the relevant time frame that they
7  worked as a Financial Advisor.  Thus, there are no issues with respect to "settlement allocation."
8  *Hanlon*, 150 F.3d at 1020.  Additionally, the settlement is reasonably "narrowly circumscribed,"
9  and any class member who wishes to "opt-out" of the settlement may do so. *See id.* at 1021.
10      The terms of the settlement state that Schmoekel shall receive a time and effort
11 enhancement of $30,000 for serving as class representative, which represents 1.7% of the class
12 fund.  This enhancement is considered unobjectionable where class representatives have invested
13 significant time in assisting prosecution of the case.  *Manual for Complex Litigation* § 21.62
14 n.971 (4th ed. 2004); *Staton*, 327 F.3d 938 at 977 (identifying factors to be considered in
15 approving enhancements to named plaintiffs as "the actions the plaintiff has taken to protect the
16 interests of the class, the degree to which the class has benefitted from those actions, . . . the
17 amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e]
18 fear[s of] workplace retaliation") (citing *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998)).  Prior
19 to the final approval of the class settlement, the Court seeks more information regarding these
20 factors to determine whether such an enhancement is appropriate for Schmoekel.  The Court is
21 also concerned about this award on top of the individual settlement amount of $20,000 to be
22 received by Schmoekel.  As a result, the Court seeks more information about this individual
23 settlement before it will be able to grant final approval of the class settlement.
24      Despite the Court's concerns about the amount to be paid to Schmoekel as a class
25 representative, the Court concludes, for the purposes of conditional class certification, that the
26 representative parties fairly and adequately protect the interests of the class.
27      **5.     Rule 23(b)(3)**
28      Finally, the proposed class must meet at least one of the requirements of Rule 23(b).

Rule 23(b)(3) is met where the Court finds that the questions of law or fact common to the class predominate over individual concerns, and the class action is the superior method for the fair and efficient adjudication of the controversy.  After reviewing the Motion, the Court finds that this requirement is met.  Here, the Class members allege the same claims and seek the same remedies.  Because the potential recovery to each individual class member is relatively low compared to the costs of litigating hundreds of individual claims, and because of the danger of inconsistent results that might result from adjudicating each claim separately, a class action is the most economical and efficient way to settle this dispute.

Accordingly, the prerequisites for conditional class certification have been met.

### B.   Preliminary Assessment of Proposed Settlement

Should the Court decide that the class is conditionally certified for settlement, it must then address whether the proposed settlement is fair, adequate, and reasonable.  *See Staton*, 327 F.3d at 957.  To determine if a settlement is fair, some or all of the following factors should be considered: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4) the amount of settlement; (5) investigation and discovery; (6) the experience and views of counsel; and (7) the reaction of class members to the proposed settlement.  *See, e.g., Hanlon*, 150 F.3d at 1027; *Staton*, 327 F.3d at 959.  To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.  *See Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

#### 1.   Strength of Plaintiffs' Case

It can be difficult to ascertain with precision the likelihood of success at trial.  The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, *see Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982), and to the extent courts assess this factor, it is to "determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case."  *Livingston v. Toyota Motor*

*Sales USA*, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal. 1995). There is nothing present to suggest that the instant case falls into the latter category. Furthermore, the outcome of the litigation is uncertain, given the potential defenses available to VALIC. Accordingly, this factor presents no obstacle to preliminary approval of the proposed settlement.

### 2.  Risk, Expense, Complexity, and Duration of Future Litigation

There are always significant elements of risk, expense, complexity, and duration when the possibility of litigation is at play. By resolving this matter before class certification, the parties have accounted for the risk that VALIC would prevail on any arguments contesting class certification or the manageability for trial. Specifically, there are risks associated with whether Plaintiff is similarly situated to other members of the putative class and whether review of each Financial Advisor's individual business expenses and deductions would result in too many individual issues. For instance, the determination of whether a specific amount sought was "necessary" or "reasonable," or whether a particular deduction was properly taken, requires individual inquiry. Furthermore, proceeding to trial would be costly and would substantially defer resolution of the case. Thus, in light of the inherent burden, expense, and uncertainty of continuing litigation, this factor encourages settlement in this case.

### 3.  Amount of Settlement

The $1.68 million settlement sum will be allocated as follows: (1) Class Counsel's attorneys' fees and costs in an amount not to exceed $453,600; (2) reasonable costs for the Claims Administrator, not to exceed $40,000, for the administration of the settlement; (3) VALIC's employer contribution of all required payroll taxes; (4) a service payment to the Class Representative in the amount of $30,000; and (5) the remainder for payments to the Class members who submit Claim Forms.

The proposed attorneys fees are approximately 27% of the common fund, which is slightly more than the 25% figure serving as a benchmark in common fund cases. *See Torrisi v. Tuscon Electric Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Ellmore v. Ditech Funding*, case no. SA CV 01-93 DOC (ANx). Before the final approval of the settlement, the Court will request more information about the circumstances that led to an upward adjustment

from the 25% benchmark. Additionally, the claims administrator, who will facilitate class notice and coordinate disbursements, is slated to receive up to $40,000 for its services.

Up to $30,000 will be distributed to the class representative to compensate him for his efforts on behalf of the class. As discussed above, the Court would like more information about Schmoekel's efforts before final approval of a $30,000 incentive award for class representation.

The settlement is designed to provide each participating Class member a designated percentage of the fund based on the number of work weeks each class member worked during the class period. To the extent that class members do not submit claim forms for their provisional share of the fund, the unclaimed share of the fund shall be returned to VALIC. However, if less than 80% of the Remainder of the fund is distributed, VALIC will redistribute unclaimed portions up to 80% to class members who make timely claims. Thus, at most, only 20% of the remainder will revert to VALIC. Under the parties' proposed timeline, class members that do not elect to opt-out must file claims within 60 days or their claims are deemed to be waived.

The Court finds that the settlement sum is reasonable and adequate, given the uncertain outcome and available defenses. Furthermore, no one will be prejudiced by the Settlement, because any class member may preserve individual rights by opting out of the class.

### 4. Investigation and Discovery

Although it is usually desirable for full discovery to have taken place to ensure the parties are making an informed decision, where there has been sufficient information sharing and cooperation in providing access to necessary data, the settlement may be fair and adequate. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). In this case, the parties engaged in extensive discovery over the course of thirteen months. VALIC produced information related to its Financial Advisors, their varying duties, the various ways they perform those duties, their compensation structures, and other information relevant to the exemption and meal/rest claims. Thus, the Court finds that sufficient discovery took place.

### 5. Experience and Views of Counsel and Reaction of Class Members

The Motion has been filed as a joint Motion, and there is no evidence of objections from

Class members. This may be anticipated, given that the parties have not yet provided formal notice to members of the putative class. To the extent that there are further objections after notification is provided to all Class members, the Court will seriously consider them at the final settlement hearing. All Class members will have an opportunity to opt-out of the settlement if they do not want to be bound by the terms. Furthermore, Plaintiff's Counsel, who are experienced and well informed on the issues, view the proposed settlement agreement as a fair and reasonable compromise.

### 6. Fraud or Collusion

The Court finds no evidence of fraud or collusion. The parties negotiated the settlement at arms length before a seasoned mediator who ultimately provided a proposal. The Court thereby concludes that the settlement was freely and fairly reached. *See Newberg on Class Actions* § 11.51 (4th ed. 2002).

When considered together, these factors support preliminary approval of the proposed class action settlement under Rule 23(e) as potentially "fundamentally fair, adequate, and reasonable."

### C. Distribution of Settlement Notices

The proposed method of distribution of the settlement notices is by mail. Defendant ostensibly has personnel information on the class members. Furthermore, the Claims Administrator will take appropriate steps to ensure it uses the best available address by using the National Change of Address database or the equivalent to obtain forwarding addresses prior to mailing and using appropriate skip tracing to maximize the probability that the Notice of Pendency and accompanying forms will be received by all Class members. This form of notice recommended by the parties is acceptable under Rule 23(c)(2). The Notice of Pendency will provided detailed information, which will permit each Class member to make an informed decision about whether to opt out, submit a Claim Form or take other action.

### D. Final Approval Hearing

Finally, the parties ask that the Court set a hearing date for the final approval of the settlement. They propose July 21, 2008, which is 126 days after the likely date of preliminary

11

1  approval of the settlement. According to the currently submitted schedule, the claims
2  administrator will send notice to all class members within 30 days of the Court's preliminary
3  approval of the settlement. Reminder cards will be submitted to all Class members who have not
4  submitted their Claim Form or Exclusion Form 30 days and 15 days prior to the deadline for
5  submitting all forms. The deadline is 60 days from the day the notices are mailed. Those
6  members who do not opt-out or submit a timely Claim Form by the deadline are deemed to have
7  released their respective claims and will be bound by the terms of the Settlement.

## IV.   DISPOSITION

For the reasons set forth above, the Court finds that (1) the class is certified for settlement purposes, (2) the proposed settlement is preliminarily approved, (3) the parties are directed to distribute the Notice, Claim, and Exclusion forms according to the manner described in the stipulated settlement; and (4) the hearing date for the final approval of settlement is set for 8:30 a.m. in Courtroom 9-D on July 21, 2008.

IT IS SO ORDERED.

DATED: March 17, 2008

_____
DAVID O. CARTER
United States District Judge

12